Paula WALLIN, Plaintiff,

v.

CINCINNATI EYE BANK FOR SIGHT
RESTORATION, INC., et al.,
Defendants.

No. C-1-89-0654.

United States District Court,
S.D. Ohio, W.D.

March 20, 1990.

John Metz, Cincinnati, Ohio, for plaintiff.

Harry Finke, IV, Stephen Bailey, Philip Zorn, Jr., Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court on a motion to dismiss the amended complaint filed by defendants Frank Cleveland, M.D. and the Hamilton County, Ohio Board of County Commissioners (Doc. 21). For the reasons stated below, the motion is hereby GRANTED.

## FACTS

This is a diversity action brought by plaintiff against defendants EBAA, Cincinnati Eye Bank For Sight Restoration, Inc. (Eye Bank), Frank P. Cleveland, M.D., Coroner for Hamilton County, Ohio, and the Hamilton County Board of County Commissioners. On or about January 25, 1988, plaintiff's son died in Kentucky from a self-inflicted gunshot wound. The Hamilton County coroner's office performs autopsies for several of the northern counties of Kentucky on a contractual basis. Pursuant to a referral by the deputy coroner of Boone County, Kentucky, the Hamilton County coroner's office performed an autopsy on the decedent's body. Plaintiff agreed to make an anatomical donation of the decedent's corneas.

Upon being notified of plaintiff's wishes by the coroner's office, the Eye Bank removed the corneas and subjected them to testing to assure their appropriateness for transplantation. On January 26, 1988, the Eye Bank informed the coroner's office that the tests indicated a positive result for the presence of the human immuno-deficiency virus (AIDS) and that the tissues were unusable. The test results were disseminated to numerous parties, including the funeral home that was to handle decedent's funeral. The funeral home refused to provide the requested funeral arrangements, and decedent's family were required to have his body cremated against their wishes. On January 28, 1988, the Eye Bank informed the coroner's office that a

mistake had been made and that decedent's tissues had tested negative for AIDS.

Plaintiff claims that defendants were negligent in their handling of the decedent's body and tissues, in testing the tissues, in disseminating false information regarding the test results, in failing to provide safeguards against mistakes such as occurred in this case, and in recklessly disregarding the matching of test results with tissues. Defendants Cleveland and the Board of County Commissioners claim that they are immune from liability in this action under various provisions of Ohio law.

## OPINION

A Rule 12(b)(6) motion examines whether a cognizable claim has been pleaded in the complaint. Rule 8(a) sets forth the basic federal pleading requirement that a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). The objective of Rule 8(a)(2) is to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The familiar standard enunciated in *Jones v. Sherrill*, 827 F.2d 1102, 1103 (6th Cir.1987) states:

> In reviewing a dismissal under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle them to relief. *Id.* at 158; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Although this standard for Rule 12(b)(6) dismissals is quite liberal, more than bare assertions of legal conclusions are ordinarily required to satisfy federal notice pleading requirements. 5 C. Wright & A. Miller, Federal Practice & Procedure § 1357 at 596 (1969). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984) (*quoting In re: Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); see also *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir.1984); 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216 at 121–23 (1969). When scrutinizing the complaint, all well-pleaded facts are construed liberally in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The United States Court of Appeals for the Sixth Circuit recently stated:

> "[W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir.1988); *McGregor v. Industrial Excess Landfill, Inc.*, 856 F.2d 39 (6th Cir.1988) *quoting, O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir. 1976).

## IMMUNITY OF DEFENDANT CLEVELAND

■ Defendant Cleveland claims that he is immune from liability for damages in this action pursuant to Ohio Revised Code Ann. Sec. 2744.03(A)(6). Section 2744.03(A) provides that in any civil action brought against a political subdivision or an employee thereof to recover damages for injury allegedly caused by an act or omission in connection with a governmental or proprietary function, certain defenses or immunities may be asserted to establish nonliabili-

ty. Pursuant to Section 2744.03(A)(6), an employee of a political subdivision is immune from liability unless one of the following applies:

(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Revised Code.

Plaintiff claims that the exception contained in subsection (6)(a) applies in this case because a coroner in Ohio has no jurisdiction to perform an autopsy on a body found in Kentucky. Plaintiff contends that this is so since Ohio Revised Code Ann. Section 313.01 defines the coroner as the coroner in the county in which the death occurs or the body is found. However, Section 313.01 provides in full that, "As used in the Revised Code, unless the context otherwise requires, 'coroner' means the coroner of the county in which the death occurs or the dead human body is found." In the context of this case, Cleveland was clearly acting within his capacity as Hamilton County coroner when he performed the autopsy on decedent.

Moreover, the Ohio Revised Code expressly authorizes a coroner to perform an autopsy on a body when the injury causing the death has occurred in another county. Ohio Revised Code Ann. Sec. 313.16 provides that in a county where no coroner's lab has been established, the coroner may request the coroner of the county where there is such lab to perform the necessary lab exams at a cost not to exceed that of the actual services and materials used. Section 313.161 further provides that if an autopsy is performed and the injury causing the death occurred within the boundaries of the county other than the one in which the autopsy was performed, such other county shall pay the cost of the autopsy. Plaintiff's contention that perform-

ance of an autopsy on a body found in another county is outside the scope of the coroner's official duties is inconsistent with these provisions.

The exception enumerated in Sec. 2744.-03(A)(6)(b) likewise does not apply in this case. Plaintiff argues that whether defendant Cleveland acted with malicious purpose, in bad faith, or in a wanton manner is a question of fact that cannot be resolved at this juncture. However, plaintiff has not alleged in the amended complaint that defendant acted in such a fashion. Nor has he alleged any facts that would support such a finding. Plaintiff does claim that defendants acted recklessly in disregarding the matching of test results with tissues. However, such claim cannot apply to defendant Cleveland since he was not involved in the Eye Bank's testing of decedent's corneas.

Finally, plaintiff does not allege that any provision of the Ohio Revised Code expressly imposes liability on defendant Cleveland. Nor is the Court aware of any such provision. Thus, the exception in Sec. 2744.03(A)(6)(c) does not apply.

In light of the inapplicability of any of the exceptions enumerated under subsection (A)(6), Cleveland is entitled to immunity under Section 2744.03. Further, assuming the constitutionality of Ohio Revised Code Ann. Sec. 2108.60, defendant Cleveland is also immune from liability under that statute.[1] Section 2108.60(B) allows a coroner who performs an autopsy pursuant to Section 313.13 to remove the decedent's corneas or to authorize a qualified individual to do so. Any person who acts in good faith under Sec. 2108.60 and without knowledge of an objection by the decedent's family or guardian to the removal of the decedent's corneas is not liable in any civil proceeding based on the removal. Ohio Revised Code Ann. Sec. 2108.60(C). For the reasons stated above, plaintiff's contention that the autopsy was not performed pursuant to Section 313.13, thereby making 2108.60 inapplicable, is not well-taken.

**1.** Plaintiff makes a general assertion in his opposing memorandum that Sec. 2108.60 violates the due process and equal protection clauses, but has not cited any authorities to support his claim. Therefore, the Court will not examine the constitutionality of Sec. 2108.60.

Moreover, plaintiff gave permission for the decedent's corneas to be removed for possible transplantation. Finally, plaintiff does not allege that Cleveland acted in bad faith in authorizing removal of the decedent's corneas. Accordingly, defendant Cleveland is immune from liability for any damages sought by plaintiff in this action.

### IMMUNITY OF THE BOARD

■ The Board of County Commissioners claims that the actions which form the basis of the complaint are governmental functions for which they are immune from liability. Plaintiff claims that the functions involved are of a proprietary nature and that the Board is therefore not entitled to immunity.

Under Ohio law, the functions of political subdivisions are divided into governmental and proprietary functions. Ohio Revised Code Ann. Sec. 2744.02. A governmental function is generally defined as one that satisfies any of the following criteria:

(C)(1)(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

(b) A function that is for the common good of all citizens of the state;

(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

Ohio Revised Code Ann. Sec. 2744.01.

A proprietary function is generally defined as one that promotes or preserves the public peace, health, safety or welfare and that involves activities customarily engaged in by nongovernmental persons. Ohio Revised Code Ann. Sec. 2744.-01(G)(1)(b).

With certain exceptions as provided in Sec. 2744.02(B), a political subdivision is not liable for damages in a civil action for injury or loss to persons or property allegedly caused by an act or omission of a political subdivision or employee thereof in connection with a governmental or proprietary function. Ohio Revised Code Ann. Sec. 2744.02(A)(1). Among the exceptions listed in Sec. 2744.02(B) is that political subdivisions are liable for injury or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions. Ohio Revised Code Ann. Sec. 2744.02(B)(2).

Plaintiff claims that the functions involved in this case were of a proprietary nature for two reasons. First, plaintiff contends that the harvesting of corneas for the benefit of the Eye Bank and the EBAA is one that is customarily engaged in by nongovernmental persons. Second, plaintiff contends that the autopsy was performed pursuant to a "personal services contract" and is therefore not within the ordinary functions which the coroner is elected to perform.

The Court finds that the functions involved here are governmental functions as defined under Section 2744.01(C)(1)(c). Although the act of harvesting corneas for transplantation may customarily be performed by private persons or entities, neither defendant Cleveland nor the County was involved in the actual harvesting of decedent's corneas. In any event, it is the erroneous finding of a positive AIDS test result, not the harvesting of the decedent's corneas, that forms the basis for plaintiff's cause of action. The extent of defendant Cleveland's involvement in the testing of the corneas was his authorizing the Eye Bank to remove the corneas. Authorizing the removal of corneas in connection with an autopsy, which function is expressly delegated to the coroner under the Ohio Revised Code, is not an activity that is customarily performed by nongovernmental entities. Furthermore, granting such authorization during the performance of an autopsy is not an activity that is specified as a proprietary function in the Revised Code. It is, however, an activity that promotes the public health. The granting of such authorization must therefore be classified as a governmental function.

With regard to the dissemination of the erroneous test results, the Court agrees with defendant that the relaying of such information occurred in connection with the coroner's performance of an autopsy, which is clearly a governmental function. The fact that the testing was performed by a private entity does not alter the nature of the coroner's function.

Finally, plaintiff's contention that the autopsy in this case must be classified as a proprietary function since it was performed pursuant to a "personal services contract" is not well-taken. As stated above, Ohio law authorizes the coroner to perform autopsies on bodies found outside of the county. The fact that the coroner may perform such autopsies pursuant to a contract with another county in an adjoining state does not alter the nature of the coroner's function.

### CONCLUSION

Accepting the allegations in the amended complaint as true, and construing them in plaintiff's favor, defendant Cleveland and the Board are immune from liability for damages in this civil action. It is therefore ORDERED that the County defendants' motion to dismiss the amended complaint is hereby GRANTED.

IT IS SO ORDERED.