**Gary SINICK Plaintiff,**

v.

**COUNTY OF SUMMIT,**
**et al., Defendants.**

**No. 5:01–CV–2101.**

United States District Court,
N.D. Ohio,
Eastern Division.

April 22, 2002.

Allyson Miller Leonard, Office of the Prosecuting Attorney, Anita L. Davis, Office of the Prosecuting Attorney, Akron, for Tammi Cook, Summit County Sheriff Officer, In her individual and official capacity, James R Dodds, Supervisor, Summit County Sheriff Office (In his individual and official capacity), fka John Doe Keith Gowen, Detective, Summit County Sheriff Officer (In his individual and official capacity), Defendants.

## OPINION AND ORDER

GWIN, District Judge.

On February 19, 2002, Defendants Summit County, Tami Cook, Stephen Sample, Keith Gowan, and James R. Dodds[1] (collectively "Defendants") filed a motion for summary judgment (Doc. 69) as to the claims that Plaintiff Gary Sinick makes in his first amended complaint (Doc. 47). Plaintiff Sinick's complaint makes three claims for relief. The first claim, brought under 42 U.S.C. § 1983 (2002) ("section 1983"), alleges an illegitimate search and seizure in violation of the Fourth Amendment to the U.S. Constitution. The second claim alleges a violation of the Ohio State Constitution. In his third claim, Plaintiff Sinick alleges intentional infliction of emotional distress. This Court has jurisdiction under 28 U.S.C. § 1331.

In deciding this motion for summary judgment, the Court must decide whether genuine issues of material fact exist as to any of the plaintiff's claims or whether the Defendants are entitled to judgment as a matter of law. After conducting this review, the Court finds that genuine issues of material fact exist regarding Plaintiff Sinick's claims for the violation of his

Edward L. Gilbert, Law Office of Edward L. Gilbert, Akron, for Gary Sinick, Plaintiff.

---

1. Plaintiff Gary Sinick filed a complaint on August 31, 2001, naming Summit County, Tami Cook, and two John Doe Summit County Sheriff Officers as defendants (Doc. 1). Pursuant to leave granted by the Court on February 12, 2002, the plaintiff filed an amended complaint (Doc. 47) substituting Stephen Sample, Keith Gowan, and James R. Dodds for the formerly named John Doe Officers.

fourth amendment rights under 42 U.S.C. § 1983, except as that claim relates to Summit County. Therefore, the Court grants summary judgment in favor of Defendant Summit County, but denies summary judgment as to the remaining defendants.

The Court further finds that Plaintiff Sinick fails to make out a claim for violation of his state constitutional rights. Thus, the Court grants the Defendants' summary judgment motion as to Plaintiff Sinick's second claim for relief. The Court also finds that Plaintiff Sinick shows genuine issues of material fact regarding his claim for intentional infliction of emotional distress, except as that claim relates to Summit County. Therefore, the Court grants Defendant Summit County's motion for summary judgment as to Plaintiff Sinick's third claim for relief, but denies the remaining Defendants' motion for summary judgment as to that claim.

## I. Background

### A. Description of Arguments

Plaintiff Sinick makes a claim under section 1983, alleging that the Defendants violated his state and federal constitutional rights and intentionally inflicted emotional distress when they searched his residence and then criminally charged him. Sinick says that, in seeking the search warrant, the Defendants provided false and misleading information to the issuing court. The plaintiff further says that the Defendants then conducted an improper search of his residence, arrested him, and held him for seventy-five days. Prior to that search, a police informant planted illegal drugs that the police later attributed to Plaintiff Sinick. Through this illegal search and seizure, Plaintiff Sinick claims that the Defendants intentionally inflicted severe emotional distress.

Defendants Cook, Sample, Gowan, and Dodds claim they are entitled to qualified immunity. Principally, the Defendants say

they were entitled to rely upon a confidential source when they sought the search warrant, and the Defendants claim they did not mislead the judge who issued the warrant. The Defendants argue that they are immune from Plaintiff Sinick's claim under the Ohio State Constitution as well as his claim for intentional infliction of emotional distress. The Defendants further argue that, even if not protected by immunity, they nevertheless are not liable because Plaintiff Sinick cannot make out his claim for intentional infliction of emotional distress. Additionally, the Defendants say that the plaintiff has failed to show a custom or policy that would establish liability for the County of Summit. Therefore, the Defendants move for summary judgment as to all of Plaintiff Sinick's claims.

### B. Factual Background

In deciding the Defendants' motion for summary judgment, the Court construes the facts and draws all reasonable inferences in the light most favorable to Plaintiff Sinick, the nonmoving party.

On September 8, 1999, Defendant Police Officer Cook sought a search warrant for Plaintiff Sinick's residence. Although not supported by probable cause, a Summit County Court of Common Pleas Judge authorized the search warrant, which was based largely on information from a confidential source. This source, Charles Capien, purportedly told Defendant Cook that he had seen a quantity of drugs in Plaintiff Sinick's residence. In seeking the warrant, Defendant Cook provided an affidavit relying on the confidential statement of Capien and not including any independent corroboration of the reliability of the confidential source.

The Defendants executed the search warrant at Sinick's home and found drugs in the location Capien indicated. As a result, the Defendants arrested Plaintiff

Sinick and charged him with possession of LSD. Capien later confessed that he planted the LSD at Sinick's residence. The criminal charges against Plaintiff Sinick were ultimately dismissed, but not before Sinick spent seventy-five days in Summit County Jail.

## II. Summary Judgment Standard

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *See Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect the outcome of the lawsuit. *See Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.*

In deciding a motion for summary judgment, the Court reviews the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *See Nat'l Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997). Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or wether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996) (internal quotation marks omitted).

## III. Discussion

### A. Section 1983 Claim

Plaintiff Sinick brings his claim, under 42 U.S.C. § 1983, for the violation of his fourth amendment rights. Sinick argues that the Defendants executed the search of his property and arrested him under a defective warrant.

Section 1983 provides a plaintiff with a means to recover for constitutional deprivations suffered under the color of state law. *See* 42 U.S.C. § 1983 (stating that every person who, under color of state law, causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured"). "In order to prevail in a section 1983 action, the plaintiff must prove that some conduct by a person acting under color of state law deprived the plaintiff ... of a right secured by the Constitution or other federal laws." *Foy v. City of Berea,* 58 F.3d 227, 229 (6th Cir.1995).

The Defendants seek summary judgment on Plaintiff Sinick's section 1983 claim, asserting qualified immunity as a defense to liability.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrine of qualified immunity gives state actors the freedom to perform their official duties without an unnecessary fear of reprisal. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (recognizing that to balance the conflicting concerns that ac-

tions for damages "may offer the only realistic avenue for vindication of constitutional guarantees" against the risk that "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," the courts have shielded "government officials performing discretionary functions with a qualified immunity").

State actors lose this immunity when they violate clearly established constitutional rights of which reasonable people would be expected to know. *See Harlow,* 457 U.S. at 818, 102 S.Ct. 2727 (stating that qualified immunity shields state actors only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). The doctrine will not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The Sixth Circuit Court of Appeals set forth a three-part test for evaluating claims of qualified immunity.

First, we determine whether a constitutional violation has occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (en banc) (internal quotation marks omitted) (citing *Dickerson v. McClellan,* 101 F.3d 1151, 1157–58 (6th Cir.1996)).

The Court now applies this analytical framework to Plaintiff Sinick's claim under section 1983.

### 1. Constitutional Violation

■ The Fourth Amendment to the U.S. Constitution provides protection for citizens and guarantees that they be free from unreasonable searches and seizures by law enforcement officers. The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g., Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Here, the warrant issued to search Plaintiff Sinick's home was without probable cause. Under Ohio law, the basis for probable cause must be found in the affidavit offered in support of the warrant. *See State v. Sharp,* 109 Ohio App.3d 757, 759, 673 N.E.2d 163, 164 (1996). An informant's tip may support a finding of probable cause upon which to base the issuance of a warrant. *See Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1989). A court evaluates the existence of probable cause based on an informant's tip under the totality of the circumstances. *See id.* Some of the factors a court considers when determining whether an informant's tip supplies the basis for probable cause are the credibility and reliability of the informant providing the information. *See id.*

The affidavit for the search warrant in the present case fails to establish probable

cause upon which to base a warrant. The affidavit lacked any description of the credibility or reliability of the confidential source from which the Defendants obtained the information about the presence of drugs at Plaintiff Sinick's residence. Instead, the affidavit merely stated that the confidential informant had given reliable information in the past. Such a conclusory statement of reliability "provides virtually nothing from which one might conclude that the informant[ is] honest or [his] information is reliable." *State v. Sharp*, 109 Ohio App.3d at 760, 673 N.E.2d at 165 (internal quotation marks omitted). Further, the Defendants did not attempt independently to corroborate any of the information provided in the tip, other than to run a background check on Plaintiff Sinick.

Additionally, in seeking the search warrant, Defendant Cook made false and misleading statements to the issuing judge in her affidavit. An action under section 1983 lies against an officer who obtains an invalid search warrant by including materially false or misleading statements in her affidavit either intentionally or with reckless disregard for the truth. *See Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989).

Defendant Cook made misleading statements about her own credibility, giving an incorrect date of hire and an incorrect description of the narcotics training she had received during her career. Contrary to the affidavit's implication that Cook was experienced, she was only a part-time reserve officer until shortly before Plaintiff Sinick's arrest, and this was her first assignment with the Summit County Sheriff's Office Narcotics Unit.

Despite what her affidavit says, Defendant Cook did not have personal knowledge of the address or description of Plaintiff Sinick's residence. She lacked personal knowledge as to whether Capien, her confidential source, had ever given reliable information to the Akron Police Department in the past. In her deposition testimony, Defendant Cook states that Capien did not tell her Plaintiff Sinick was in the residence when Capien saw the drugs, although she made a statement to that effect in her affidavit. (Cook Depo. Vol. I.) The affidavit also fails to state that Capien refused to participate in a controlled buy or to wear a wire when asked to approach Plaintiff Sinick's residence. (Capien Depo. at 91.) The affidavit supporting the search warrant relies totally upon Capien's credibility. By misrepresenting Capien's credibility, Defendant Cook's misleading information gave crucial support for the issuance of the warrant.

By making false and misleading statements in her affidavit, Cook was able to secure the search warrant. When executed, law enforcement officers found the drugs that informant Capien had planted. As a result, law enforcement officers arrested Sinick and detained him for seventy-five days until the criminal charges against him were dismissed. Certainly, the search of Sinick's home under a warrant that was so lacking in probable cause, and the resulting illegitimate seizure and detention of him constitute a constitutional violation. Therefore, the violation of Plaintiff Sinick's fourth amendment rights is a constitutional violation that satisfies the first part of the three-part test under *Williams*.

2. Clearly Established Law

The right to be free from unreasonable searches and seizures is clearly established law. *See Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir.2000). More specifically, the right to be protected from searches and seizures conducted under a search warrant that lacks probable cause and which a reasonable officer could not reasonably believe was based upon probable cause is also a clearly established right.

*See, e.g., Anderson,* 483 U.S. at 641, 107 S.Ct. 3034.

### 3. Objectively Unreasonable

■ Even if the Defendants violated Plaintiff Sinick's constitutional rights, and those rights were clearly established at the time, the Defendants will nevertheless be entitled to qualified immunity if a reasonable officer in like circumstances would have believed the search and resulting seizure to be legal. Therefore, the Court must determine whether it was objectively reasonable for the Defendants to seek and execute the search warrant at Plaintiff Sinick's home in light of the surrounding circumstances.

Defendant Cook sought the warrant to search Plaintiff Sinick's home based on information from confidential informant Capien. The U.S. Supreme Court in *Gates* explained the standard for determining when an informant's tip establishes probable cause for the issuance of a warrant. *See Gates,* 462 U.S. at 238, 103 S.Ct. 2317. *Gates* explained that the existence of probable cause should be evaluated under the "totality of the circumstances." *Id.*

When using an affidavit based on information from a confidential informant to obtain a search warrant, the affidavit must provide a substantial basis for determining probable cause. *See id.* at 239, 103 S.Ct. 2317. "An officer's statement that 'affiants have received reliable information from a credible person and believe' that [contraband] is stored in a home" is inadequate. *See id.* (quoting *Aguilar v. Texas,* 378 U.S. 108, 109, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)).

Though rejecting the rigid two-prong test of *Aguilar* and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the *Gates* Court did not abandon *Spinelli*'s concern for the trustworthiness of the informant. *See Gates,* 462 U.S. at 239, 103 S.Ct. 2317. Therefore, to establish probable cause and obtain a warrant upon which an objectively reasonable officer may rely, the warrant must be supported by more than "bare bones" assertions of the confidential informant's reliability. *See id.*

In its decision regarding Plaintiff Sinick's motion to suppress the evidence seized in the search of his home, the Summit County Court of Common Pleas determined that probable cause did not attend the search warrant (Doc. 77, Ex. 8). However, the Defendants will be immune unless their reliance on the search warrant was unreasonable. An officer is "entitled to rely on a judicially secured warrant for immunity from an action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll County,* 876 F.2d 1238, 1243 (6th Cir.1985) (citing *Malley v. Briggs,* 475 U.S. at 344, 106 S.Ct. 1092). An officer's knowledge of a confidential informant's prior reliability can support a reasonable belief that probable cause existed for the warrant. *See Jeffers v. Heavrin,* 10 F.3d 380, 381 (6th Cir.1993).

Here, the affidavit in support of the search warrant failed to set forth more than bare bones assertions of the confidential informant's reliability. With regard to the informant's reliability, Defendant Cook's affidavit stated:

> A confidential source, hereinafter, referred to as C/I has provided reliable information to the Summit County Sheriff's Office Narcotics Unit and the Akron Police Department, which has been corroborated through investigations and has led to convictions.

(Def. Cook's Aff. for Search Warrant at ¶ 1.) In her deposition, however, Defendant Cook admitted that this was the first time she worked with Capien as a confidential informant, and she had not conducted any

background checks into Capien's past criminal history to assess his reliability. (Cook Depo. at 27.) Additionally, Defendant Cook stated that she did not have personal knowledge regarding whether Capien had in fact supplied information to the Akron Police Department, or whether that information, if provided, proved to be reliable. (Cook Depo. Vol. I.)

"[A]n officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancey*, 876 F.2d at 1243 (citing *Donta v. Hooper*, 774 F.2d 716, 718–19 (6th Cir.1985); *United States v. Mankani*, 738 F.2d 538, 545 (2d Cir. 1984) (citing *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978))). Genuine issues of material fact exist regarding whether Defendant Cook either knowingly or recklessly provided inaccurate information in her affidavit seeking a search warrant. *See Hill*, 884 F.2d at 275. Therefore, it is objectively unreasonable for her to have relied on the warrant to search Plaintiff Sinick's home and arrest him for possession of LSD found on the premises.

In some cases, probable cause can be found even without corroboration of the informant's past reliability if other evidence is available. Under *Gates*, when the reliability of that informant cannot be established, corroborating evidence of informant's information is important. *See Gates*, 462 U.S. at 241, 103 S.Ct. 2317 ("Our decisions applying the totality of circumstances analysis ... have consistently recognized the value of corroboration of details of an informant's tip by independent police work.").

Here, the Defendants did not further investigate the facts set forth in Capien's tip. The Defendants did nothing independently to corroborate the information, other than to inquire into the criminal history of Plaintiff Sinick. Absent more than blanket assertions regarding the informant's reliability and corroborating evidence of the accuracy of the information, a reasonable officer in like circumstances would not have relied on the warrant as supported by probable cause.

Because the affidavit provided no more than "bare bones" assertions and unsubstantiated claims of the confidential informant's reliability, it was objectively unreasonable for the Defendants to rely on the warrant when executing the search of Plaintiff Sinick's residence. Therefore, the Court rejects the Defendants' argument for qualified immunity as to Plaintiff Sinick's section 1983 claim. Accordingly, the Court denies the Defendants' motion for summary judgment as to Plaintiff Sinick's first claim for relief.

### 4. Municipal Liability

■ Plaintiff Sinick says that Defendant Summit County inadequately trained and supervised its employees and that the resulting deficient customs and polices caused the plaintiff's damages. Defendant Summit County claims that it is immune from liability, because Plaintiff Sinick cannot show that Summit County itself caused the constitutional violation at issue. Defendant Summit County can only be held liable under section 1983 if it maintains unconstitutional or illegal policies. *See Monell v. N.Y. City Dep't Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Under section 1983, a municipality can be found liable when the municipality itself causes the constitutional violation at issue. *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (citing *Monell*, 436 U.S. at 658, 98 S.Ct. 2018). A municipality's failure to train its employees adequately can create liability under section 1983. *See id.* at 382 n. 3,

387 n. 6, 388, 98 S.Ct. 2018. However, "the adequacy of police training may serve as the basis for [section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 98 S.Ct. 2018; *Bd. County Comm'rs v. Brown,* 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Allen v. Muskogee,* 119 F.3d 837, 841–42 (10th Cir.1997).

A municipality may be deliberately indifferent when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights." *Canton,* 489 U.S. at 390, 109 S.Ct. 1197. Showing deliberate indifference generally requires a showing of a pattern of violations that implies the municipality knew its employees needed training to prevent the recurrence of the violations. *See id.* at 397, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part). Relying on *Canton,* however, the Tenth Circuit in *Allen* found that "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." *Allen,* 119 F.3d at 842 (citing *Brown,* 520 U.S. at 407–08, 117 S.Ct. 1382; *Canton,* 489 U.S. at 390 n. 10, 109 S.Ct. 1197).

Here, Plaintiff Sinick fails to show evidence of recurring violations or that the actions of the Defendant Officers resulted from unconstitutional county policies. Plaintiff Sinick makes only a conclusory statement that the Defendants had a long reputation for abuse of the Fourth Amendment. Without more, this claim against Summit County for violations under section 1983 cannot survive summary judgment. Accordingly, the Court grants Defendant Summit County's motion for summary judgment with regard to municipal liability under section 1983.

**B. Ohio State Constitutional Claim**

In his second claim for relief, Plaintiff Sinick says that the Defendants violated his rights under the Ohio State Constitution. The plaintiff, however, fails to specify how or under which section of the Ohio State Constitution his rights were violated.

The Defendants move for summary judgment as to all claims set forth in Plaintiff Sinick's first amended complaint, claiming they are immune from suit on this claim. Plaintiff Sinick offers no response regarding his state constitutional claim in his opposition to the Defendants' motion for summary judgment. "If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

Summary judgment is appropriate here because Plaintiff Sinick fails to establish that the Defendants are not entitled to immunity on this claim. Before a plaintiff can claim that a defendant should not be entitled to immunity for violating the plaintiff's constitutional rights, the plaintiff must first show that a violation of his constitutional rights took place. Plaintiff Sinick offers no evidence or argument regarding how his state constitutional rights were violated. Therefore, the Court grants the Defendants' motion for summary judgment as to Plaintiff Sinick's second claim for relief.

**C. Intentional Infliction of Emotional Distress**

The Defendants move for summary judgment on Plaintiff Sinick's Ohio state law claim for intentional infliction of emotional distress. The Defendants argue that Summit County is immune under section 2744.02 of the Ohio Revised Code,

because political subdivisions are immune from liability for intentional torts. The Defendants assert that a suit against the officers in their official capacities constitutes a suit against a political subdivision, therefore, section 2744.02 provides them with immunity as well. Additionally, the Defendants claim that the officers in their individual capacities are immune from suit under section 2744.03 because Plaintiff Sinick fails to show the officers acted in a wanton or reckless manner. The Defendants also say that, even if they are not immune, Plaintiff Sinick fails to make out a prima facie case of intentional infliction of emotional distress, and therefore the Defendants should be entitled to summary judgment.

Plaintiff Sinick responds that not only does he establish the necessary elements for an intentional infliction of emotional distress claim, but also that the Defendants are not immune from liability for his tort claim. Resolving this dispute, the Court finds that Plaintiff Sinick establishes a genuine issue of material fact as to each element of his intentional infliction of emotional distress claim. The Court further finds that Plaintiff Sinick makes the requisite showing of wanton or reckless conduct on the part of the individual officers to overcome a claim for immunity. However, the Court finds that Summit County is immune from suit under section 2744.02 of the Ohio Revised Code, which provides that municipalities are not liable for intentional torts. *See* Ohio. Rev.Code § 2744.02(A) (1994 & Supp.2002).

■ Plaintiff Sinick asserts a claim under Ohio law against the Defendants for intentional infliction of emotional distress. To recover on such a claim, the plaintiff must prove four elements:

(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional dis-

tress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."

*Pyle v. Pyle*, 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (1983) (quoting Restatement (Second) Torts § 46 cmts. d, j (1965)).

Construing the facts in the light most favorable to Plaintiff Sinick, the nonmoving party, the Court finds that Plaintiff Sinick shows genuine issues of material fact as to each of the four elements outlined in *Pyle*. Though the Defendants might not have intended to cause Plaintiff Sinick, in particular, serious emotional distress, the Defendants should have known that their use of a search warrant lacking probable cause would cause severe distress to the occupants of the house searched.

As discussed above, issues of fact exist as to whether Defendant Cook recklessly disregarded the truth when submitting her affidavit in support of the search warrant. Construing the facts in Plaintiff Sinick's favor, by providing false information to obtain a search warrant, executing a defective search warrant, and illegitimately arresting and detaining the occupants of the premises, the Defendants' behavior went beyond the bounds of what is tolerated in a civilized society. This finding is colored by evidence showing that Capien was pressured to provide information under circumstances that undermined any credibility.

The illegitimate search and seizure directly caused Plaintiff Sinick's injuries.

As a result, Plaintiff Sinick sought treatment for anxiety, depression, and other mental illness, he visited an emergency room for mental problems, anxiety, and chest pain, and required weekly counseling sessions. Plaintiff Sinick, therefore, offers evidence showing genuine issues of material fact that the Defendants' actions caused him serious emotional distress for which he required medical treatment. Therefore, the Defendants are only entitled to summary judgment if they can show that immunity prevents the plaintiff from holding them liable.

The Defendants argue that even if Plaintiff Sinick can show a prima facie case of intentional infliction of emotional distress, they are nevertheless entitled to immunity.

### 1. Municipal Liability

■ Defendant Summit County is a political subdivision under section 2744.01(F) of the Ohio Revised Code. *See* Ohio Rev. Code § 2744.01(F) (" 'Political subdivision' or 'subdivision' means a municipal corporation, township, county, school district or other body corporate and politic responsible for governmental activities in a geographic area smaller than the state.").

Section 2744.02(A)(1) explains that political subdivisions are not liable for damages in tort actions. That section states:

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or a proprietary function.

Ohio Rev.Code § 2744.02(A)(1). Political subdivisions are immune, under this section, from their own acts or omissions as well as from the acts or omissions of employees acting on their behalf. *See id.*

Summit County is immune from tort liability for Plaintiff Sinick's intentional infliction of emotional distress claim unless an exception to that immunity applies. Section 2744.02(B) outlines the exceptions to the blanket immunity provided in subpart (A) for political subdivisions. None of those exceptions to immunity apply to tort claims resulting from the governmental functions of a political subdivision or its employees.[2]

Plaintiff Sinick cannot show that any of the exceptions to Summit County's immunity apply.[3] The plaintiff does not offer any evidence to show that the actions of Summit County fall into one of the exceptions under section 2744.02. Therefore, Summit County is immune from tort liability for Plaintiff Sinick's intentional infliction of emotional distress claim. Accordingly, the Court grants summary judgment in favor of Defendant Summit County as to the plaintiff's third claim for relief.

---

**2.** Section 2744.02(B) lists five exceptions to a political subdivision's immunity from damages claims. These exceptions provide for liability for damages for acts or omissions of the political subdivision or of its employees for the negligent operation of motor vehicles, the negligent performance of proprietary functions, the failure to maintain bridges, public roadways, and other public grounds, negligent acts of employees that occur in some governmental buildings, and when a statute expressly imposes liability. *See* Ohio Rev.Code § 2744.02(B)(1)-(5).

**3.** "[A]ctions of a police department are governmental rather than proprietary in nature. Therefore, the immunity in R.C. § 2744.02(A) applies." *Ziegler v. Mahoning County Sheriff's Dep't,* 137 Ohio App.3d 831, 835, 739 N.E.2d 1237, 1241 (2000). Thus, none of the enumerated exceptions to immunity listed in section 2744.02(B) for political subdivisions apply in this case.

## 2. Employee Liability

Employees of political subdivisions are also immune from tort liability when performing governmental functions unless an exception to that immunity applies. *See, e.g., Cook v. Cincinnati,* 103 Ohio App.3d 80, 90, 658 N.E.2d 814, 820–21 (1995) ("[A] police officer, for example, cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established."); *Williams v. Franklin County Sheriff's Dep't,* 84 Ohio App.3d 826, 830, 619 N.E.2d 23, 26 (1992).

"The employees of a political subdivision are immune from liability pursuant to R.C. 2744.03(A)(6) unless the employee's acts or omissions 'were with malicious purpose, in bad faith, or in a wanton or reckless manner.'" *Cook,* 103 Ohio App.3d at 90, 658 N.E.2d at 820 (quoting Ohio Rev.Code § 2744.03(A)(6)); *Wilson v. Stark County Dep't Human Servs.,* 70 Ohio St.3d 450, 452, 639 N.E.2d 105, 107 (1994). To overcome the Defendants' motion for summary judgment, Plaintiff Sinick must show evidence raising a genuine issue of material fact that the Defendants' actions or omissions were malicious, in bad faith, or in a wanton or reckless manner. *See id.* at 91, 639 N.E.2d 105, 658 N.E.2d at 821, 658 N.E.2d 814; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that to overcome a motion for summary judgment, the nonmoving party must demonstrate the existence of a factual dispute and must produce evidence on any issue for which that party bears the burden of production at trial).

Plaintiff Sinick demonstrates factual issues regarding the wanton and reckless behavior of the Defendants in seeking and executing the search warrant at his home. For purposes of the statute granting immunity to employees of a political subdivision, the terms "wanton" is the failure to exercise any care whatsoever. *See Cook,* 103 Ohio App.3d at 91, 658 N.E.2d at 821. To be wanton behavior, "the actor must be conscious that his conduct will, in all likelihood, result in an injury." *Id.,* 658 N.E.2d at 821 (citing *Fabrey v. McDonald Police Dep't,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35 (1994)). "Reckless" conduct refers to an act done "with knowledge or reason to know or facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent." *Piro v. Franklin Township,* 102 Ohio App.3d 130, 139, 656 N.E.2d 1035, 1041 (1995); *Fabrey,* 70 Ohio St.3d at 356, 639 N.E.2d at 35. The question of whether conduct is wanton or reckless is a question of fact best left for trial. *See, e.g., Fabrey,* 70 Ohio St.3d at 356, 639 N.E.2d at 35.

With these definitions in mind, the Court finds that Plaintiff Sinick shows that genuine issues of material fact exist regarding the conduct of the Defendants. For the reasons discussed above, factual disputes exist regarding whether Defendant Cook wantonly or recklessly disregarded the truth in seeking the search warrant. Additionally, a factual dispute exists regarding whether the Defendants' reliance on the search warrant was objectively unreasonable. Because genuine issues of material fact exist regarding the wanton and reckless nature of the Defendants' conduct surrounding the procurement and execution of the search warrant, summary judgment on the basis of immunity is not appropriate. *See Whitler v. McFaul,* 123 Ohio App.3d 199, 207, 703 N.E.2d 866, 871–72 (1997). Therefore, except as noted above with regard to Defendant Summit County, the Court denies the Defendants' motion for summary judgment on Plaintiff Sinick's third claim for relief.

## IV.  Conclusion

For the foregoing reasons, the Court grants in part and denies in part the Defendants' motion for summary judgment on the claims set forth in Plaintiff Sinick's first amended complaint.  Specifically, the Court grants summary judgment in favor of all of the Defendants on Plaintiff Sinick's claim for violation of the Ohio State Constitution.  The Court also grants summary judgment in favor of Defendant Summit County on Plaintiff Sinick's section 1983 claim and his claim for intentional infliction of emotional distress.  The Court, however, denies summary judgment on Plaintiff Sinick's section 1983 and intentional infliction of emotional distress claims as those claims relate to Defendants Cook, Sample, Gowan, and Dodds.

IT IS SO ORDERED.